## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, Individually, and on behalf of all others similarly situated, | ) | Civil Action No. 2:23-cv-1107 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CENTERVILLE CLINICS INC. | ) | |
| 1070 Old National Pike Road | ) | |
| Fredericktown, Pennsylvania 15333 | ) | |
| | ) | |
| *Defendant.* | ) | |

## NOTICE OF REMOVAL

Pursuant to 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442, and on the grounds set forth below, Defendant Centerville Clinics, Inc. ("Centerville") removes to this Court the civil action of Plaintiff Jane Doe, styled *Jane Doe v. Centerville Clinics, Inc.*, Washington County, Pennsylvania, Court of Common Pleas, No. 2023-2922, and commenced on or about May 8, 2023. A copy of the complaint is attached hereto as Exhibit A, and copy of the state court docket as of the filing of this notice of removal is attached as Exhibit B.

1.      Centerville is a community health center recipient of federal grant funds under Section 330 of the Public Health Service Act (codified at 42 U.S.C. § 254b *et seq.*). As such—and for all relevant times—Centerville applied for and received federal status as a "deemed" United States Public Health Service (PHS) employee for purposes of the protection afforded by 42 U.S.C. § 233(a). Copies of the Notice of Deeming Action—confirming Centerville's deemed PHS status for calendar years 2020, 2021, 2022, and 2023—are attached hereto as Exhibit C. The protection that Centerville's deemed status affords is an absolute immunity from *any* civil action or

proceeding resulting from its performance of (or alleged failure to perform) medical or related functions within the scope of its deemed federal employment. 42 U.S.C. § 233(a), (g), and (h).

2. This action falls squarely within that statutory protection. *See Mixon v. CareSouth Carolina, Inc.*, Case No. 22-cv-00269, 2022 WL 1810615 *4-8 (D.S.C. June 2, 2022) (C.J., Harwell) (granting deemed health center defendant's motion to substitute United States, over its objection, in a putative class action arising out of health center's alleged failure to safeguard personal and confidential information of current and former patients); *Ford v. Sandhills Medical Foundation, Inc.*, Case No. 4:21-cv-02307-RBH,  2022 WL 1810614 (D.S.C. June 2, 2022) (same), *appeal filed*, No. 22-2268 (4th Cir., December 9, 2022); *Doe v. Neighborhood Healthcare*, No. 21-cv-1587, 2022 WL 17663520 at *7 (S.D. Cal. Sept. 8, 2022) (agreeing with *Mixon* and *Ford* that "failures by the health centers to maintain the confidential nature of the records constituted a medical or related function" within the meaning of 42 U.S.C. § 233(a)); *see also Kezer v. Penobscot Cmty. Health Ctr.*, No. 15-cv-225, 2019 BL 141566 at *8 (D. Me. Mar. 21, 2019) (concluding deemed PHS defendants' accessing the plaintiff's confidential medical record constituted a related function as "the performance of quality improvement and quality assurance activities . . . are patently related to the provision of medical services") (rejecting argument that "233(a) immunity applies only to 'medical malpractice" claims against medical providers involving improper medical treatment, not to a breach of the duty created by HIPPA (*sic*) to safeguard Ms. Kezer's medical records") (noting also the Government "conced[ed] . . . that the 'maintenance of the confidentiality of [the plaintiff's] mental health medical records constituted a covered medical or related function' under the language of § 233(a)." *Id*. at 2019 BL 141566, at *6 (quoting Government's brief)); *Mele v. Hill Health Ctr.*, No. 3:06-cv-00455, 2008 WL 160226, at *3 (D. Conn. Jan. 8, 2008) (concluding claim resulting from improper disclosure of medical

information "concern[ed] the medical functions of providing treatment and the related function of ensuring the privacy of patient medical information," and was "covered by section 233(a)" immunity); *but see Marshall v. Lamoille Health Partners, Inc.*, No. 2:22-cv-166, 2023 WL 2931823, at *4 (D. Vt. Apr. 13, 2023), *appeal filed*, No. 23-800 (2d Cir., May 12, 2023).

3.      According to the operative complaint, this civil action arises out of Centerville's alleged practice of making unauthorized disclosures of its patients' confidential personally identifying information and/or protected health information  (collectively referred to as "private information" or "PI") to third parties, including Meta Platforms, Inc. d/b/a Meta ("Facebook"), in an effort to "improve and to save costs on [Centerville's] marketing campaigns, improve its data analytics, and attract new patients." Ex. A., Compl., at ¶¶ 1-26.

4.      The complaint alleges, in essence, that: (1) Centerville owes various duties to Plaintiff and the putative class members—arising out of their patient-provider relationship—"to protect and to safeguard" their personal information from "unauthorized disclosure," (2) Centerville breached those duties by failing to implement and maintain reasonable security procedures and practices to protect Plaintiff and the putative class members' PI from unauthorized disclosure and by disclosing their PI to third parties through the use of data tracking technologies (*e.g.*, the Meta Pixel and related technology) on Centerville's website and online platforms without patient authorization, and, as a result, (3) Centerville caused various harms to Plaintiff and the putative class members. Ex. A., Compl., at ¶¶ 1-26.

5.      Plaintiff asserts claims of invasion of privacy (intrusion upon seclusion), breach of implied contract, unjust enrichment, breach of fiduciary duty, violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. § 20101 *et seq*., violations of

Pennsylvania Wiretapping and Electronic Surveillance Control Act 18 PA. C.S. § 5701, *et seq*. Ex. A., Compl., at ¶¶ 152-218.

## JURISDICTION

### Deemed Federal Employee Removal—42 U.S.C. § 233(*l*)(2)

6.      The Court has jurisdiction under 42 U.S.C. § 233(*l*)(2), a federal officer removal statute enacted specifically for the benefit of deemed PHS employees (such as Centerville). Section 233(*l*)(2) provides a deemed individual or entity the right to a federal forum for a judicial determination as to the availability of a federal immunity defense. *Campbell v. S. Jersey Med. Ctr.*, 732 F. App'x 113 (3d Cir. 2018) (recognizing this statutory purpose of § 233(*l*)(2)); *see also Booker v. United States*, Case No. 13–1099, 2015 WL 3884813 *7 (E.D. Pa. June 24, 2015) (recognizing "removal pursuant to § 233(*l*)(2) serves the same purpose as procedure contemplated by [28 U.S.C.] § 2679(d)(3)"]). The PHS Act imposes no time limit on § 233(*l*)(2) removals. *Estate of Booker v. Greater Philadelphia Health Action*, 10 F.Supp.3d 656, 665-66 (E.D. Pa. 2014) ("The fact that § 233(*l*)(2) was added to a statutory scheme in which suits against health centers were removable at any time before trial provides a basis to infer that Congress intended the same time frame to govern removals by the health centers themselves"); *Campbell*, 732 F. App'x 113 (42 U.S.C. § 233(*l*)(2) removal is not permitted *after* entry of default judgment as that is no longer "before trial" within the meaning of § 233(c)); 42 U.S.C. § 233(c) (permits Attorney General to remove state actions on behalf of actual and deemed PHS employees "any time before trial"). Given the commanding language and unmistakable thrust of § 233(*l*), this provision should be broadly construed to facilitate the removal, hearing, and judicial determination expressly contemplated therein. *Cf. Willingham v. Morgan,* 395 U.S. 402, 406–407 (1969) (construing federal officer removal statute, 42 U.S.C. § 1442, broadly in favor of a federal forum to ascertain

the availability of a federal defense arising out of official conduct). Section 233(*l*)(2), like the general officer removal statute (28 U.S.C. § 1442), operates as an exception to the well-pleaded complaint rule. *Campbell*, 732 Fed. Appx. at 117 ("For section 233(*l*)(2) to have any effect, a district court must at least have jurisdiction to substitute the United States when it is appropriate to do so.").

### Federal Officer Removal—28 U.S.C. § 1442

7.      The Court also has jurisdiction under 28 U.S.C. § 1442(a)(1), the general officer removal statute. Section 1442(a)(1) affords a right of removal to "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1). The statute permits removal even when the underlying federal question arises only as a defense to a state-law claim. *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999); *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n.12 (2006) (noting federal officer removal statute operates as an exception to the "well-pleaded complaint" rule). The general officer removal statute protects important federal interests and must be broadly construed in favor of a federal forum. *See Colorado v. Symes*, 286 U.S. 510, 517 (1932) ("It scarcely need be said that such measures [allowing for federal officer removal] are to be liberally construed to give full effect to the purposes for which they were enacted."), *Willingham*, 395 U.S. at 406–07.

8.      Pursuant to 42 U.S.C. § 1442(a)(1), Centerville is an officer under a federal officer. When broadly construed, as required, the phrase "any officer" in § 1442 can be read to include Centerville as it is "deemed to be an employee of the Public Health Service" under a federal statute that not only affords Centerville a federal immunity defense but affords an additional removal right as well.

9.      In the alternative of finding that Centerville is a qualifying federal officer under 28 U.S.C. § 1442, it nevertheless qualifies as a person acting under a federal officer. *Agyin v. Razmzan*, 986 F.3d 168, 177 (2d Cir. 2021) (holding that (a) individual deemed PHS employee's removal under 42 U.S.C. § 1442 was proper because, as an employee of a deemed health center entity, he was acting under a federal officer with respect to medical and related functions performed on behalf of the health center entity, and (b) deemed PHS employee enjoyed "the same legal immunity that is extended to employees of the Public Health Service")); *see also* H.R. Rep. 104-398, reprinted in 1995 U.S.C.C.A.N. 767, 774 (indicating congressional intent that deemed PHS employees be "covered for malpractice claims under the [FTCA] in the same manner as are employees of the Public Health Service"); *see also Friedenberg v. Lane Cnty.*, 68 F.4th 1113 (9th Cir. May 19, 2023) (citing H.R. Rep. No. 104-398, at 4, for the point that "Congress intended for deemed PHS employees to receive protection 'in the same manner' as traditional PHS employees during the coverage period") (reversing district court's denial of substitution in a state court action deemed PHS employees removed to federal court pursuant to 28 U.S.C. § 1442 and 42 U.S.C. § 233).

10.     To invoke § 1442(a)(1), a defendant who is not a federal officer must demonstrate that (1) he or she or it is a "person" under the statute (2) who acted 'under color of federal office' and (3) has a "colorable federal defense." 42 U.S.C. § 1442(a)(1). As a nonprofit corporation, which operates a federal grant project on behalf of HHS, Centerville qualifies as a person within the meaning of § 1442. *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (finding that the "term 'person' includes corporate persons"). Centerville "acted under" an office of HHS to "assist, or to help carry out, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 149 (2007); 42 U.S.C. § 254(*o*) (the central office of the Health Resources and

Services Administration administers Health Center grant program on behalf of the HHS Secretary). In particular, Centerville is statutorily obligated to serve an area or population that the HHS Secretary designated as "medically underserved." *Id.* at 254b(a)(1). Centerville is therefore supporting the mission of the actual PHS by performing functions that would otherwise fall within PHS responsibilities.

11.    Centerville is subject to detailed federal requirements, oversight, and control. *See* H.R. Rep. No. 102-823 at 5 ("Federal requirements associated with the grants are administratively burdensome and address all areas of operation."); *accord Agyin*, 986 F.3d at 177 (concluding community health center was "subject to federal oversight and control" sufficient to render health center physician "acting under" a federal officer for 28 U.S.C. § 1442(a)(1)). Among these requirements is the obligation to "have an ongoing quality improvement systems that includes clinical services and management, and that maintains the confidentiality of patient records." 42 U.S.C. § 254b(k)(3)(C) (emphasis added) (prohibiting HHS's approval of a health center's grant application absent a determination of compliance with this requirement); see also 42 C.F.R. § 51c.110 ("All information as to personal facts and circumstances obtained by the project staff about recipients of services shall be held confidential, and shall not be divulged without the individual's consent. . . .") (emphasis added); 42 C.F.R. § 51c.303 ("A community health center supported under this subpart must . . . [i]mplement a system for maintaining the confidentiality of patient records in accordance with the requirements of § 51c.110 of subpart A.").

12.    Centerville's deemed federal status (as to specified periods) is irrevocable and affords "the same" immunity that an actual PHS employee enjoys under 42 U.S.C. § 233(a). 42 U.S.C. § 233(g)(1)(A) (making remedy against United States "exclusive of any other civil action or proceeding *to the same extent* as the remedy against the United States is exclusive pursuant to

subsection (a)") (emphasis added), (F) (providing that deemed status is "final and binding" on the Secretary, the Attorney General, and all parties to litigation). For purposes of § 1442, Centerville's federal defense is "colorable," to the say the least.

## PARTIES

13.     Defendant Centerville is a Pennsylvania-based nonprofit organization that receives federal funding under Section 330 of the PHS Act (42 U.S.C. § 254b) to operate a community-based health center project that provides primary and related health care services to medically underserved residents of various Pennsylvania counties, regardless of any individual's ability to pay for the services. *See* 42 U.S.C. § 254b(a), (b), (j), (k). Centerville serves specific geographic areas that the HHS Secretary has designated as "medically underserved." *Id*. at 254b(a)(1). *See* Ex. A, Compl., at ¶ 28.

14.     According to her complaint, Plaintiff Jane Doe is a resident of Pennsylvania and a patient of Centerville. *See* Ex. A, Compl., at ¶ 27.

## STATUTORY FRAMEWORK

15.     Under the Emergency Health Personnel Act of 1970, Pub. L. No. 91-623, § 4, 84 Stat. 1868, 1870-71 (1970), codified at 42 U.S.C. § 233, PHS personnel are absolutely immunized from any civil action or proceeding arising out of their performance of medical, surgical, dental or related functions within the scope of their employment. 42 U.S.C. § 233(a). Section 233(a) extends absolute immunity to PHS personnel by making the remedy for damages against the United States under the FTCA the *exclusive* remedy for such actions. *Id*.

16.     To facilitate the legislative objective of ensuring medical services in underserved areas, 42 U.S.C. § 233(a) shields PHS personnel from personal liability arising out of their performance of medical, surgical, dental, and related functions. Without such protection, reports

suggest that the cost of professional liability insurance would greatly hinder or altogether preclude the performance of those duties. *See* § 2, 84 Stat. 1868; H.R. Rep. No. 1662, 91st Cong., 2d Sess. 1 (1970); 116 Cong. Rec. 42,543 (1970) (Rep. Staggers, the House of Representatives sponsor, stating that PHS physicians "cannot afford to take out the customary liability insurance as most doctors do," "because of the low pay that so many of those who work in the [PHS] receive."). To achieve its purpose, the grant of absolute immunity to PHS personnel under 42 U.S.C. § 233(a) is "broad" and "comprehensive." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010) (immunity is broad enough to "easily accommodate both known and unknown causes of action").

17.     The Federally Supported Health Centers Assistance Act of 1992 (and as amended in 1995) (the "FSHCAA"), codified at 42 U.S.C. § 233(g) *et seq*., authorizes the Secretary of the U.S. Department of Health and Human Services (HHS) to extend to certain federally funded health centers and their officers, directors, and employees (and certain contractors) the same protection that § 233(a) affords to actual PHS employees. That protection is an "*absolute immunity* . . . for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui*, 559 U.S. at 806 (emphasis added); 42 U.S.C. § 233(g)(1)(B) (extending 233(a) immunity to deemed PHS employees "to the same extent" as it is afforded to actual PHS employees).

18.     To qualify as a deemed entity for § 233(a) immunity, a health center grantee must submit an application with detailed information and supporting documentation sufficient for the HHS Secretary to verify that the coverage should apply to all services provided by the health center to patients and in certain circumstances non-patients of the center. The applicant is also required to demonstrate that the health center meets four requirements listed in § 233(h), including a requirement to "implement[] appropriate policies and procedures to reduce the risk of malpractice

9

*and the risk of* lawsuits *arising out of any health or health-related functions performed by the entity*." 42 U.S.C. § 233(g)(1)(D) and (h) (emphasis added).

19.     HHS, responsible for such determinations, is prohibited from deeming a health center to be a PHS employee absent a determination the health center has "implemented appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health or health-related functions performed by the entity." 42 U.S.C. § 233(h)(l). HHS designs an "application … to verify" that the health center applicant has done so. *Id*. at § 233(g)(1)(D).

20.     In the HHS-prescribed deeming application, the health center applicant is required to assure HHS it would "implement and maintain systems and procedures for protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use, consistent with federal and state requirements." *See* HHS, Health Resources and Services Administration, Application for Health Center Program Award Recipients for Deemed Public Health Service Employment with Liability Protections Under the Federal Tort Claims Act, https://bphc.hrsa.gov/sites/default/files/bphc/compliance/pal-2021-01_0.pdf. At the same time, Centerville had to acknowledge that its "failure to implement and maintain systems and procedures for protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use, consistent with federal and state requirements, may result in disapproval of [the HHS] deeming application." *Id*. Because HHS has identified "confidentiality and security" of patient information as one of the "areas/*activities of highest clinical risk* for the health center," a health center applicant is also required to develop, implement, and document the completion of an "annual health care risk management training plan for staff members" that included, among other things, training on "HIPAA medical record

confidentiality requirements" and "other applicable medical record confidentiality records." *Id*. (emphasis added).

21.     The statute requires the Secretary to make a deeming determination for health centers and their personnel within 30 days of receipt of such an application. *Id*. at § 233(g)(1)(E). The application seeks § 233(a) immunity in advance of and with respect to a specific prospective period (*i.e.*, calendar year). A favorable deeming determination by the Secretary (which confers immunity) is "final and binding" (42 U.S.C. § 233(g)(1)(D)-(F)) on HHS, the Attorney General, and "other parties to *any* civil action or proceeding." 42 U.S.C. § 233(g)(1)(F) (emphasis added), with respect to the designated period.

22.     By requiring a prompt and advance deeming determination, which constitutes a final and binding determination on all parties for a specified and prospective period, and conferring absolute immunity from any action or proceeding resulting from covered conduct for that period, the FSHCAA is designed to eliminate a federally-funded health center's need to purchase (expensive) private professional liability insurance for actions arising out of the performance of medical or related functions within the scope of their employment and in so doing allows centers to devote their federal grant funds to patient services (rather than insurance premiums). *See* H.R. Rep. 102-823, pt. 1, at 3 (1992).

23.     When a civil action or proceeding is brought against a deemed PHS employee, the entity or individual has a duty to deliver the pleadings to the grantor agency's designated representative, which is HHS's Office of General Counsel (OGC). HHS OGC is in turn required, to "promptly" provide copies of the pleadings to the Attorney General and appropriate local U.S. Attorney. 42 U.S.C. § 233(b).

24.     Upon notification of a state court action against a deemed individual or entity (which is confirmed by a Notice of Deeming Action), the Attorney General has a mandatory (non-discretionary) duty to appear in that court within 15 days of notice of the lawsuit to report whether the "Secretary has determined under subsections (g) and (h) of [Section 233], that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id*. at § 233(*l*)(1). The report to the state or local court of the HHS Secretary's deeming determination is—for § 233(*l*)(1)'s removal purpose—also "deemed to satisfy the provisions of [42 U.S.C. § 233(c)] that the Attorney General certify that an entity, officer, governing board member, employee, or contractor of the entity was acting within the scope of their employment or responsibility." *Id*. at § 233(*l*)(1); *Cf*. 28 U.S.C. § 2679(d)(3). "Naturally, the availability of a judicial hearing does not mean that the Government's view of the rights and responsibilities of the parties will be determined to have been in error, but it does mean that the issue will be determined by a judge and subject to appellate review." *Kezer v. Penobscot Cmty. Health Ctr.*, No. 15-cv-00225-JAW, 2016 BL 516708, at *7 (D. Me. Aug. 15, 2016) (citing *Hui*, 559 U.S. at 811) ("To be sure, [§ 233(a)] immunity is contingent upon the alleged misconduct having occurred in the course of the PHS defendant's duties, but a defendant may make that proof subject to the ordinary rules of evidence and procedure.").

25.     If, despite that mandatory duty, the Attorney General (or his or her authorized representative) fails to appear in the state court action or proceeding within 15 days of notice of the state action and remove it to federal court, the deemed entity or individual has an absolute right to remove the matter to the appropriate federal district court, without any time limit for doing so.

*Id*. at § 233(*l*)(2). Section 233(*l*)(2) is in substance and effect an officer removal statute, akin to (but even more generous than) the general officer removal statute at 28 U.S.C. § 1442(a)(1).

26.     Upon removal, the state court proceeding is stayed, by operation of law, until the federal district court conducts a "hearing" to determine the proper forum or procedure and issues an order consistent with its determination. 42 U.S.C. § 233(*l*)(2).

27.     The hearing in federal district court following § 233(*l*)(2) removal allows a deemed entity or individual to challenge the federal government's failure or refusal to certify that the deemed defendant was performing medical or related functions within the scope of its (his or her) employment as a deemed Public Health Service employee with respect to claims against it (him or her) and substitute the United States as the only proper defendant in its (his or her) place. Where, as here, the claim is covered by the deemed defendant's § 233(a) immunity, § 233(*l*)(2) ensures that the United States is substituted as the only proper defendant its place. *El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health and Human Servs*., 396 F.3d 1265, 1272 (D.C. Cir. 2005); *see also Booker*, 10 F.Supp.3d at 656.

## FACTUAL AND PROCEDURAL BACKGROUND PERTINENT
## TO THE GROUNDS FOR REMOVAL

28.     As a health center recipient of grant funds under 42 U.S.C. § 254b, Centerville is required to, among other things, perform an annual "needs assessment" of its "medically underserved" service area. *See generally* Health Center Program Compliance Manual, Chp. 3 Needs   Assessment   (2018),   available   at   https://bphc.hrsa.gov/compliance/compliance-manual/introduction (citing pertinent statutory and regulatory authorities). As explained in Centerville's grant application, which HHS approved, Centerville assesses "the need for health services in the catchment area of the center based on the population served, or proposed to be

13

served, utilizing, but not limited to, the following factors: (1) Available health resources in relation to the size of the area and its population, including appropriate ratios of primary care physicians in general or family practice, internal medicine, pediatrics, or obstetrics and gynecology to its population; (2) Health indices for the population of the area; (3) Economic factors affecting the population's access to health services, such as percentage of the population with incomes below the poverty level; and (4) Demographic factors affecting the population's need and demand for health services, such as percentage of the population age 65 and over."

29.     Centerville is also required to either provide or arrange for certain "primary health services," including "services that enable individuals to use the services of the health center, such as "outreach … services." 42 U.S.C. § 254b(b)(1)(A)(iv) (emphasis added). In its grant application, Centerville specifically notified HHS of its intent to engage in "outreach" activities "to the community to promote healthy living, eliminate unjust health disparities, and enhance the socioeconomic and environmental communities." Centerville described such activities as "[o]utreach services, such as community health fairs newspapers, radio, Centerville clinics website, and social media are used to promote awareness of the health center's services and support entry into care. These activities assist us in recruiting and retaining patients from the target population/service area." Moreover, Centerville explained that it would use its website and online platforms to inform its patient population of the availability of sliding fee discounts, primary care services, patient intake processes, among other things.

30.     According to Plaintiff's complaint, Centerville "encourages its patients to use its Online Platforms for booking medical appointments, locating physicians and treatment facilities, communicating medical symptoms, searching medical conditions and treatment options, and

more." Ex. A, Compl. ¶ 6. These functions are among the medical and related functions of a community health center.

31.     Centerville submitted deeming applications for itself and its personnel with respect to each year and all times relevant to this action. The HHS Secretary, under 42 U.S.C. § 233(g) and (h), approved the applications and deemed Centerville and its personnel for purposes of the protections afforded under § 233(a) *et seq*. Copies of the Notice of Deeming Action for the calendar years 2020, 2021, 2022, and 2023 are attached hereto as Exhibit C.

32.     On or about May 8, 2023, Plaintiff filed a civil action against Centerville in the Washington County Court of Common Pleas. At its core, the complaint alleges that Centerville disclosed Plaintiff's and the proposed class members' personal information to third parties (including Facebook) without authorization. *Id*. at ¶ 1-27.

33.     The underlying complaint was brought to the attention of Centerville through its counsel. On May 18, 2023, Centerville delivered copies of the complaint to HHS OGC. Exhibit D (notification through HHS OGC's designated email address and HHS OGC confirmation of receipt). That same day (May 18) Centerville also sent copies of the complaint to Lee Karl, Civil Chief, United States Attorney's Office, Western District of Pennsylvania. Exhibit E (Notice to the local U.S. Attorney). On information and belief, Mr. Karl had actual receipt of the complaint by May 19, 2023.

34.     On or about May 30, 2023, Plaintiff delivered a copy of the complaint to Centerville's Director of Finance and Personnel, Patricia Martos, at one of Centerville's grant-supported sites.

35.     On or about June 1, 2023 the Attorney General appeared in the state court but failed to notify that court, as expressly required by 42 U.S.C. § 233(*l*)(1), whether the Secretary made a

deeming determination under 42 U.S.C. § 233(g) and (h) as to the period in which the events giving rise to this action occurred. In other words, the determinations *of the Secretary*, which the Attorney General was required to report, are reflected in Exhibit C. Those determinations—and the federal status and immunity they confirm—are the basis for removal jurisdiction under § 233(*l*). As each notice of deeming action indicates, deemed status and immunity is akin to an occurrence-based insurance policy. *See* Exh. C (recognizing that deemed status/immunity operates like occurrence-based, as opposed to claims-made, coverage). Section 233(*l*) recognizes that when such a "policy" is in place for the named defendant, for the period in which the events giving rise to the claim against that defendant occurred (not when the claim itself is made), then a federal forum is the proper place for the threshold immunity determination. Moreover, immunity determinations ought to be made at the earliest stages of litigation because immunity is not only a defense against liability but a right to be free from the burdens of litigation altogether. *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) ("an immunity from suit rather than a mere defense to liability . . . like an absolute immunity . . . is effectively lost if a case is erroneously permitted to go to trial" (citing *Mitchell v. Forsyth*, 472 U. S. 511, 526 (1985))), *Mitchell*, 472 U.S. at 525 ("the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action").

## CENTERVILLE'S ABSOLUTE IMMUNITY COVERS THIS ACTION

36.    As previously stated, § 233(a) provides absolute immunity to deemed PHS employees "for damage for personal injury, including death, *resulting from the performance of medical*, surgical, dental, *or related functions*, […] while acting within the scope of his office or employment." 42 U.S.C. § 233(a), (g).

37. The immunity provided under § 233(a) is not limited to medical malpractice but encompasses any action or proceeding arising out of "*related functions*"—*i.e.,* functions that are related to the performance of medical, surgical, or dental functions. 42 U.S.C. § 233(a); *see e.g., Z.B. ex rel. Next Friend v. Ammonoosuc Community Health Services, Inc.*, 2004 WL 1571988, *4 (D. Me. June 13, 2004) (phrase "related to" in the FSHCAA regulation recognizes that § 233(a) immunity extends beyond the mere act of providing medical care); *see also Pinzon v. Mendocino Coast Clinics Inc.*, Case No. 14–cv–05504–JST, 2015 WL 4967257 at *1 (N.D. Ca. 2015 Aug. 20, 2015) (granting, over objection, motion by United States to substitute itself in place of deemed health center defendant in civil action asserting claims for, among other things, violation of "the Americans with Disabilities Act," "Civil Rights Act of 1964," and "Health Insurance Portability and Accountability Act of 1996"); *Pomeroy v. United States*, 2018 WL 1093501, at *2 (D. Mass. Feb. 27, 2018) ("The statute must cover a broader scope of activity than the delineated categories alone, or else 'related functions' would be mere superfluity.") (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) for proposition that statutes should "be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant"); *accord Friedenberg*, 68 F.4th 1113 ("We must give meaning to the plain text of the statute, and here, § 233(a) plainly encompasses damages stemming from the performance of medical and 'related' functions.").

38. The claims against Centerville resulted from its "performance of medical … or related functions" within the scope of its deemed federal employment. 42 U.S.C. §§ 233(a), 254(b). On its face, the complaint alleges that Centerville, with respect to plaintiff and its other similarly situated patients, breached its duty to maintain and secure the confidentiality of their respective PI and, as a result, caused harms to plaintiff and the proposed class member patients of Centerville.

39.     Maintaining the confidentiality of a patient's health and confidential information is a function that is not only related to, but is inseparable from, the medical functions of a health care provider. Indeed, the statute that governs the health center program, and makes a health center (such as Centerville) eligible for deemed status in the first place, requires the center to have, among other things, "an ongoing quality improvement system that includes clinical services and management, and *that maintains the confidentiality of patient records*." 42 U.S.C. § 254b(b)(1)–(2), (k)(3)(C).

40.     Plaintiff's complaint acknowledges as much. *See, e.g.*, Exh. A, Compl., at ¶ 2 ("If people do not trust that their medical information will be kept private, they may be less likely to seek medical treatment..."), ("making sure [patient information] is kept confidential and not disclosed to anyone other than the person's medical provider is necessary to maintain public trust in the healthcare system as a whole"); *see also* Exh. A, Compl., at ¶ 113-17 (citing various medical ethics rules "protecting the privacy of patient data and communications, which are applicable to [Centerville]").

41.     Courts have had no trouble recognizing claims concerning a deemed PHS defendant's alleged failure to safeguard confidential patient information as arising out of a "medical … or related function" within the meaning of 42 U.S.C. § 233(a). *See, e.g.*, *Mixon*, 2022 WL 1810615 *4-8 (finding deemed health center defendant's maintenance of confidential patient records is a "related function" within the meaning of § 233(a) immunity, regardless of whether the party alleging a failure to do so is an individual plaintiff or a putative class of patients); *Kezer v. Penobscot Community Health Center*, 15-cv-225-JAW, 2019 BL 141566 at *6 (D. Me. Mar. 21, 2019) (breach of patient confidentiality claim against deemed PHS employees falls within the scope of § 233(a) immunity, and performance of administrative or operational duties, including

the duties the maintain the confidentiality of patient PI, can qualify as "related functions" within the meaning of § 233(a)); *Cf. Teresa T. v. Ragaglia*, 154 F. Supp. 2d 290, 300 (D. Conn. 2001) (finding that doctor's duty to report suspected child abuse is a "related function to the doctor's performance of medical services."); *Brignac v. United States*, 239 F.Supp.3d 1367 (N.D. Ga. 2017) (recognizing that allegations of failing to report misconduct and failing to hire and retain is conduct covered under the FSCHAA); *La Casa de Buena Salud v. United States*, 2008 WL 2323495, **18-20 (D.N.M. March 21, 2008) (recognizing that FSHCAA coverage under § 233(a) may extend to claims of negligent hiring, retention, and supervision).

42.     Plaintiff's claims arise out of "health or health-related functions performed by [Centerville]," 42 U.S.C. § 233(h)(1), which are quintessential to its health center project, statutorily mandated for all deemed health center entities, and a condition of their deemed PHS status—*i.e.*, "to implement and maintain systems and procedures for protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use, consistent with federal and state requirements, may result in disapproval of this deeming application." *See, e.g.*, Program Assistance Letter 2021-21, Calendar Year 2022 Requirements for Federal Tort Claims Act (FTCA) Coverage for Health Centers and Their Covered Individuals (Feb. 9, 2021), *available at* https://bphc.hrsa.gov/sites/default/files/bphc/ftca/pdf/pal-2021-01.pdf; 42 U.S.C. §§ 233(h)(1), § 254b(k)(3)(C). Plaintiff alleges Centerville failed to provide this protection, disclosed PI without her authorization, and was harmed as a result. As set forth in detail below, Centerville's performance of these functions is intertwined with and inseparable from its medical functions, as a Section 330 health center and safety net provider.

43.     The protection of confidential patient information is not only a medical or related function within the scope of Centerville health center project/deemed PHS employment, but this

action, to the extent it seeks relief *from Centerville*, is rooted in allegations that it failed to adequately perform such functions. In other words, with respect to Centerville, the complaint acknowledges, if not hinges on, the inextricable connection between the mandated medical and related functions of federally funded health center and the duty to maintain the confidentiality of patient information. Ex. A, Compl. at ¶ 164 (Plaintiffs and putative class members were required to provide Centerville with PI on its "website and billing portal as a condition of receiving healthcare services").

44.     Plaintiff's exclusive remedy with respect to the alleged acts or omissions of Centerville is a claim against the United States under the FTCA. *See* 42 U.S.C. § 233(a) (remedy against United States provided by FTCA "shall be exclusive of any other civil action or proceeding.").

## OTHER PROCEDURAL REQUIREMENTS

45.     Venue before this court is proper because this Notice of Removal is filed in the federal district court that embraces the place where the local state court matter is pending. *See* 28 U.S.C. §§ 1441(a), 118(c).

46.     Under 28 U.S.C. § 1446(b)(1), removal is timely because Centerville has filed this notice of removal within thirty days of Plaintiff's purported service of process. *Agyin,* 986 F.3d at 175 (officer removals, unlike general removals under 28 U.S.C. 1441, are to be construed broadly in favor of a federal forum); *Friedenberg,* 68 F.4th 1113 (same).

47.     In addition, a copy of this Notice of Removal is being contemporaneously filed with the local state court where this action was filed, along with copies of all process and pleadings. 28 U.S.C. § 1446(d).

48.     Pursuant to 42 U.S.C. § 233(*l*)(2), all proceedings in this case are automatically stayed pending the Court's hearing and threshold immunity determination. 42 U.S.C. § 233(*l*)(2) (upon removal, "[t]he civil action … shall be stayed in ["the appropriate United States district court"] until such court conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim for damages described in subsection (a) and issues an order consistent with such determination").

## CONCLUSION

For the forgoing reasons, the Court should, after conducting a hearing pursuant to 42 U.S.C. § 233(*l*)(2), substitute the United States as the only proper defendant in place of Centerville Clinics, Inc. in the above-captioned action.

Respectfully submitted,

FOX ROTHSCHILD LLP

Dated: June 15, 2023

*s/ John R. Gotaskie, Jr.*
John R. Gotaskie, Jr.
PA ID No. 81143
BNY Mellon Center
500 Grant Street, Suite 2500
Pittsburgh, PA 15219
Tel: 412.391.1334
jgotaskie@foxrothschild.com

AND

FELDESMAN TUCKER LEIFER FIDELL LLP
Matthew S. Freedus*
1129 20th Street, N.W., 4th Floor
Washington, DC 20036
Tel: 202.466.8960
mfreedus@ftlf.com

*Counsel for Defendant Centerville Clinics, Inc.*

*A motion for *pro hac* admission will be filed Promptly

21

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 15th day of June, 2023, a true and correct copy of foregoing Notice of Removal, was served upon the below parties via First Class, U.S. Mail, postage prepaid:

Elizabeth A. Bailey, Esq.
SALTZ MONGELUZZI &BENDESKY P.C.
52nd Floor
1650 Market Street
Philadelphia, PA 19103

Lynn A. Toops, Esq.
Amina A. Thomas, Esq.
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204

J. Gerard Stranch, IV, Esq.
Andrew E. Mize, Esq.
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203

Samuel J. Strauss, Esq.
Raina C. Borelli, Esq.
TURKE & STRAUSS, LLP
613 Williamson St., Suite 201
Madison, WI 53703

*s/ John R. Gotaskie, Jr.*
John R. Gotaskie, Jr. Esquire